```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
POLCOM USA, LLC,

                Plaintiff,                    MEMORANDUM AND ORDER

          - against -                           20 Civ. 9206 (NRB)

AFFILIATED FM INSURANCE COMPANY,

                Defendant.
----------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

This is a coverage dispute between Polcom USA, LLC ("Polcom" or "plaintiff"), a creator, manufacturer, shipper, and installer of modular hospitality spaces, and Affiliated FM Insurance Company ("AFM" or "defendant"), its property insurer, arising from a 2018 shipment of modules of pre-manufactured hotel rooms from Chojnice, Poland to Seattle, Washington.  According to Polcom, the modules sustained significant damage while at the port of Seattle, and Polcom filed a claim for the damage with AFM.  Within one year after AFM denied coverage, Polcom sued AFM.  AFM now moves to dismiss the lawsuit, arguing that this action is untimely pursuant to the terms of the insurance policy, and that, even if it is timely, the complaint fails to state a claim for breach of the implied covenant of good faith and fair dealing.

1

## Background[1]

On October 24, 2016, Polcom, a Delaware company with its principal place of business in New York, entered into a Marine Open Cargo Policy (the "Policy") with AFM, a Rhode Island corporation with its principal place of business in Rhode Island. The Policy, drafted by AFM, provided insurance for overseas shipments. Coverage under the Policy was made on a "warehouse to warehouse" basis, thus attaching to the cargo from the time the insured goods left the point of origin and continuing until the goods reached their final destination. Pertinent to the instant case, the Policy contained a clause that limited the time period to initiate litigation arising from the Policy (the "Timeliness Provision"), which reads:

> No suit or action on this Policy shall be sustainable in any court of law or equity . . . unless same shall be commenced within twelve (12) months next after the happening of the loss or from when the goods arrived or should have arrived at their final destination in the ordinary course whichever is sooner . . . .

The shipment at issue had its origin in a contract Polcom entered into with M.A. Mortenson Company ("Mortenson") in 2017 to provide 228 modular units (the "Modules") for the construction of

---

[1] The following facts, which are drawn from the operative complaint, are accepted as true for purposes of the Court's ruling on defendant's motion to dismiss. The Court draws all reasonable inferences in plaintiff's favor. See Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012).

2

a hotel in Seattle (the "Hotel").  Following construction of the Modules, the Modules were shipped from Chojnice, Poland to Seattle, Washington between June and August 2018.

Upon arrival at the port in Washington ("Port"), between August 11 and 13, 2018, the Modules were unloaded.  Following unloading, a labor strike delayed the transport of the Modules from the Port to the Hotel.  The Modules were staged outside at the Port without cover for the duration of the strike.[2]  After the strike resolved on or about October 1, 2018, transport of the Modules to the Hotel began, and concluded on December 29, 2018.

Between the arrival of the Modules at the Port in August 2018 and the delivery of the final Modules to the Hotel on December 29, 2018, the Port received over seven inches of rain.  At the Hotel, the Modules were staged outside until on or about February 19, 2019, when a temporary roof was installed to cover them.

When the first Modules arrived at the Hotel in October 2018, excess moisture was detected inside the Modules.  Between October and December 2018, Mortenson hired several moisture remediation specialists and consultants.  In January 2019, Polcom notified AFM about the moisture-related issues.  AFM sent a marine surveyor to

---

[2] In the meantime, the parties executed Endorsement Number 20 of the Policy, which extended coverage for the Modules while they were stored at the Port during the labor strike.  The parties further extended the insurance coverage when they renewed the Policy in the fall of 2018.

3

assess the Modules that same month.  AFM's surveyor observed the presence of water damage and mold formation and ran various tests to determine the source of the water damage.  On February 21, 2019, Mortenson and Polcom, in consultation with their experts, determined that substantial demolition and rebuilding of the Module interiors was necessary for remediation.

Mortenson, Polcom, and the hotel company undertook the remediation throughout 2019 and into 2020.  Ultimately, Polcom sustained remediation costs in excess of $17.3 million.  Polcom alleges that the loss attributable to the time period that the Modules were held at the Port, i.e., from August 2018 until December 29, 2018, the final date of delivery, exceeds $4 million.  Polcom also alleges that the Policy covers any loss attributable to damage that occurred prior to August 2018, when the Modules arrived at the Port.

On November 5, 2019, over nine months after AFM sent a surveyor to assess the Modules, AFM sent Polcom's broker a letter totally denying coverage under the Policy for the losses incurred due to the damage to the Modules (the "November 5, 2019 Letter").[3] After receipt of the November 5, 2019 Letter, Polcom retained Aeskay Average Adjusters (New York) Ltd. ("AAA") to challenge AFM's

---

[3] The recited bases for the denial were threefold: (1) Polcom failed to demonstrate physical loss or damage to the shipments during the insured transit; (2) stowage on deck during the ocean voyage precluded coverage for damage occurring during the ocean voyage; and (3) Polcom had provided late notice of its claims — that is, after installation of the Modules began at the Hotel.

4

positions on the denial of coverage. AAA did so via letters dated January 27, 2020 and May 26, 2020. On May 1, 2020 and June 10, 2020, however, AFM "cursorily" reiterated its denial of coverage. Complaint, ECF No. 5 ("Compl."), ¶¶ 40, 42. Between January 27 and May 26, the parties also engaged in email correspondence, during which AFM allegedly ignored the facts raised by AAA on Polcom's behalf. Polcom alleges that AFM's coverage denial was made in bad faith, that AFM relied on erroneous bases for denial, and that AFM failed to investigate the detailed facts and arguments raised by AAA.

Polcom initiated suit on November 3, 2020 — just within one year after AFM denied coverage via the November 5, 2019 Letter. Polcom brings a breach of contract claim and also brings a claim for breach of the implied covenant of good faith and fair dealing, alleging that AFM exhibited bad faith in rejecting any coverage obligation whatsoever. On January 19, 2021, AFM filed a motion to dismiss, seeking to dismiss both counts on the basis that the action was untimely pursuant to the Timeliness Provision and on the further ground that the breach of implied covenant claim is duplicative of the breach of contract claim. Polcom opposed the motion on February 18, 2021, and AFM filed a reply in further support of its motion to dismiss on March 8, 2021.

**Discussion**

I. **Timeliness**

The threshold issue on this motion is one of timeliness and specifically the meaning of the Timeliness Provision. There are two issues. First, what is the meaning of "happening of the loss"? Second, to which portion of the Timeliness Provision does the term "whichever is sooner" apply? Plaintiff's complaint was timely only if the Court concludes that (1) the meaning of "happening of the loss" refers to the date on which a legal claim accrued, and (2) the phrase "whichever is sooner" applies only to the second prong of the Timeliness Provision.

At the outset, we note that while under New York law,[4] a six-year statute of limitations typically applies to breach of contract actions, see N.Y. C.P.L.R. § 213, parties to a contract may agree, as here, on a limitation period shorter than that provided by statute. N.Y. C.P.L.R. § 201; see also Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan, 537 F. Supp. 2d 546, 548 (S.D.N.Y. 2008). Dismissal is appropriate where suit is initiated beyond the contractual limitations period. Blake v. Prudential Ins. Co. of Am., No. 14 Civ. 7042, 2016 WL 1301183, at *3 (S.D.N.Y. Mar. 31, 2016).

---

[4] The parties do not dispute that New York law applies.

6

In this case, the parties dispute whether the Timeliness Provision is ambiguous. "[A] contract is ambiguous if the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." Riverside S. Plan. Corp. v. CRP/Extell Riverside, L.P., 60 A.D.3d 61, 66 (2008), aff'd, 13 N.Y.3d 398, 920 N.E.2d 359 (2009) (citation omitted). "[P]recedent establishes that ambiguities in an insurance policy should be construed in favor of the insured and against the insurer, the drafter of the policy language . . . ." No Hero Enterprises B.V. v. Loretta Howard Gallery Inc., 20 F. Supp. 3d 421, 426 (S.D.N.Y. 2014) (citing Matter of Mostow v. State Farm Ins. Cos., 88 N.Y.2d 321, 326 (1996)).

### a. "Happening of the Loss"

The main focus on the parties' dispute is the meaning of "happening of the loss." "[T]he word 'loss' is ambiguous standing alone, because it can refer either to the damage incurred or to the accrual of the claim." Franco Apparel Grp., Inc. v. Nat'l Liab. & Fire Ins. Co., No. 10 Civ. 8205, 2011 WL 2565287, at *3 (S.D.N.Y. June 28, 2011), aff'd, 481 F. App'x 694 (2d Cir. 2012) (citing Fabozzi v. Lexingtion Ins. Co., 601 F.3d 88, 90-91 (2d Cir. 2010)). Polcom maintains that "happening of the loss" refers to the date on which AFM denied coverage and a legal claim accrued, i.e., November 5, 2019, whereas AFM argues that "happening of the

7

loss" refers to the date on which the loss occurred, i.e., February 21, 2019, when Polcom, Mortenson, and the experts ascertained how to remediate the damage.[5]

"New York law treats insurance contracts similarly to other contracts, in that a plaintiff's claim accrues 'in the absence of any provision regarding accrual in the contract of insurance . . . upon breach.'" Cont'l Cas. Co. v. Stronghold Ins. Co., 866 F. Supp. 143, 145 (S.D.N.Y. 1994), aff'd, 77 F.3d 16 (2d Cir. 1996). "Whether a contractual time limitation contained in a property insurance policy begins to run from the occurrence of the specific event insured against or from a later date depends upon the precision of the language used." 71 N.Y. Jur. 2d Insurance § 2562. As the parties recognize through their references to ample precedent, we are not writing on a blank slate: the meaning of "happening of the loss" is governed by law that pre-dates the execution of the Policy at issue here.  We therefore resolve this motion based on that precedent.

Polcom relies primarily on the case Fabozzi v. Lexington Ins. Co., 601 F.3d 88 (2d Cir. 2010) ("Fabozzi").  There, a homeowner's policy required that a plaintiff bring suit within two years "after the date of the loss."  The parties disputed whether this language

---

[5] We observe that AFM's position that the "happening of the loss" occurred on February 21, 2019 relies on a floating target, which is hardly the objective marker from which limitations periods are measured.

8

referred to the date on which the cause of action accrued, i.e., the date on which all conditions precedent to bringing suit had been met following the insurance company's two-year investigation, or the date that the damage occurred. Id. at 89.  The Court explained that in New York courts, generic language such as "the date of loss" typically refers to the "date on which the claim accrues, not the date on which damage was incurred." Id. at 91, 93.  By contrast, more specific language, such as "after the inception of the loss," has been construed as a term of art referring to the date of "the occurrence of the insured peril." Id. at 91.

AFM relies predominantly on a case from two years later, Franco Apparel Grp., Inc. v. Nat'l Liab. & Fire Ins. Co., 481 F. App'x 694 (2d Cir. 2012) ("Franco").  There, the parties disputed the meaning of policy language requiring suit "within one year from the date of the happening of the loss out of which the said claim arose."  Id.  In a summary order,[6] the Court concluded that the language was sufficiently precise to tie the limitations period to the date of actual damage, i.e., the date on which the goods at issue were stolen.  Id. at 1.  In so doing, the Court explained

---

[6] As Franco was a summary order, we are not required to consider its implications on this Court's decision, see No Hero Enterprises B.V. v. Loretta Howard Gallery Inc., No. 13 Civ. 8464, 2014 WL 10936545, at *1 (S.D.N.Y. May 28, 2014), but consider AFM's argument in any event.

9

that the policy language was "of equal precision" to the language "inception of the loss."  Id.

Fabozzi, Franco, and other relevant precedent compel the conclusion that Polcom's position is correct.  As the language "the happening of the loss" does not clearly link the limitations period to the occurrence of the damage itself,[7] "happening of the loss" must be construed to refer to the date on which the claim accrued, i.e., November 5, 2019, the date of the denial letter.  See, e.g., Mercedes-Benz Fin. Servs. USA, LLC v. Allstate Ins. Co., 162 A.D.3d 1183, 1184-85 (2018) (finding that generic "date of loss" language "does not evince an unmistakable intention that the one-year limitations period be measured from the occurrence underlying the event," and therefore tying the limitations period to the date of denial of coverage); Sassi v. Jersey Trucking Serv., Inc., 283 A.D. 73, 77 (1st Dep't 1953) (finding that period of limitation language "after the happening of the loss" "did not begin to run until the assured was in a position to institute action against the insurance company").[8]

---

[7] Though AFM states in a conclusory manner that the Policy uses the term "loss" throughout it to refer to the date of actual physical loss or damage, AFM cites to no examples.  See Reply in Supp. of Def.'s Mot. to Dismiss, ECF No. 30, at 5-6.

[8] This conclusion is supported by additional precedent.  In Flat Ridge 2 Wind Energy LLC v. Those Underwriters at Lloyd's, No. 650508/2014, 2014 WL 3373435, at *6 (N.Y. Sup. Ct. June 30, 2014), the parties disputed the meaning of a policy's language, "unless commenced within twelve (12) months next after the happening becomes known."  The Court concluded that this language referred to the time that plaintiff's claim accrued, i.e., the date upon which the underwriter denied coverage.  In Parker v. Am. Sur. Co. of New York, 29 N.Y.S.2d 414, 415 (Sup. Ct. Monroe Co. 1941), aff'd, 32 N.Y.S.2d 779 (App. Div. 1941),

10

Franco does not persuade us otherwise.  As the District Court's decision makes clear, the term "happening of the loss" was not the pivotal phrase in the case, as the policy's time limitation contained additional, more precise language absent here.  There, the District Court observed that the "'date of the happening of the loss out of which the said claim arose' . . . pegs the 'loss' at issue to the actual damage[.]"  Franco, 2011 WL 2565287, at *3.  To adopt the alternate meaning, the District Court explained, "would be to contort the final phrase of the limitations provision, which would effectively read: 'the date of the happening of the [accrual of the claim] out of which the said claim arose.'"  Id.  Obviously, such an interpretation would be nonsensical.  That conclusion has no bearing on significantly sparser language in the instant case, which is itself defined by precedent, and which does

---

too, the Court concluded that the policy's language was "general and lacking in precision."  Thus, the words "within two years from the date upon which the loss or damage occurred" were construed to require suit within two years after the claim's accrual.  See also Steen v. Niagara Fire Ins. Co., 89 NY 315, 322-23 (1882) (concluding that the generic language, "next after the loss or damage shall occur," refers to the time at which "the right to bring an action exists"); 71 N.Y. Jur. 2d Insurance § 2562 (phrases such as "after the happening of the loss" or "after the loss shall occur" are considered "general and lacking in precision").  (AFM observes that 71 N.Y. Jur. 2d Insurance § 2562 cites to Parker, 29 N.Y.S.2d 414, in support of this proposition, even though Parker does not itself assess the phrase "after the happening of the loss."  Nor does the treatise purport that this is the case.  Instead, the treatise's reference to Parker provides a helpful example of another insurance policy that lacked precision.)  AFM, meanwhile, cites to only one case, which is from 1958, that uses the phrase "happening of the loss" and ties the limitations period to the event underlying the loss.  See Habers Exp. Agencies, Inc. v. Universal Ins. Co., 1958 WL 92178, at *1 (S.D.N.Y. June 30, 1958).  However, this case does not engage in an analysis of the phrase's potential ambiguity, and instead focuses on a question of waiver.  Accordingly, we find it to be a non-persuasive outlier.

11

not place "the happening of the loss" within any larger context. See Flat Ridge 2, 2014 WL 3373435, at *6 (distinguishing Franco).

### b. "Whichever is Sooner"

The parties also dispute the proper application of "whichever is sooner" in the Timeliness Provision.[9] Given the lack of commas and the repeated use of the conjunction "or," we see three possibilities:

**Option 1:** "[W]hichever is sooner" could apply to each occurrence individually. Thus, a lawsuit must be initiated within twelve months of:
    a. The happening of the loss, or
    b. When the goods arrived, or
    c. When the goods should have arrived,

whichever is sooner.

**Option 2:** "[W]hichever is sooner" could apply to both the first and second prongs of the Timeliness Provision. Thus, a lawsuit must be initiated within twelve months of:
    a. The happening of the loss, or
    b. When the goods arrived or should have arrived,

whichever is sooner.[10]

**Option 3:** "[W]hichever is sooner" could apply only to the second prong of the Timeliness Provision. Thus, a lawsuit must be initiated within twelve months of:
    a. The happening of the loss, or
    b. When the goods arrived or should have arrived, whichever is sooner.[11]

---

[9] Though we agree with Polcom that AFM did not meaningfully raise arguments regarding the application of "whichever is sooner" in its moving submission, we nevertheless must determine the proper interpretation in order to resolve the instant motion.

[10] AFM argues in its reply submission that this reading is correct.

[11] In this reading, application of the phrase "whichever is sooner" admittedly appears to be of limited use, perhaps suitable for circumstances where, i.e., goods were not delivered by their delivery date or where goods arrived early but with damage.

12

Applied to the facts here, as established above, the "happening of the loss" occurred on November 5, 2019; the goods arrived between October and December 29, 2018; and the goods should have arrived in about August 2018.  Thus plaintiff's complaint was timely filed only if the Court concludes that Option 3 is correct — in other words, if a lawsuit was considered timely within twelve months of the happening of the loss on November 5, 2019.

As the list of options makes clear, the Timeliness Provision is ambiguous: the phrase "whichever is sooner" could apply to each occurrence in the provision, to both the first and second prong, or only to the second prong.  As the Court has resolved that precedent defines "happening of the loss" as the date on which defendant denied coverage, it follows that only Option 3 gives meaning to the clause "after the happening of the loss" in the Timeliness Provision. As a Court must "strive to 'give meaning to every sentence, clause, and word'" in an insurance contract, Zurich Am. Ins. Co. v. ABM Indus., Inc., 397 F.3d 158, 165 (2d Cir. 2005) (quoting Travelers Cas. & Sur. Co. v. Certain Underwriters at Lloyd's of London, 96 N.Y.2d 583, 594 (2001)), we adopt the reading set forth in Option 3.[12]  Any other reading would read "happening of the loss" out of existence.

---

[12] This conclusion is supported by sound policy as well.  According to AFM's Option 2 reading, Polcom would have needed to initiate suit by December 2019, i.e., one year after the goods arrived, approximately one month after AFM denied coverage, and before AAA attempted to negotiate the denial of coverage

13

As we hold that the Timeliness Provision permitted Polcom to initiate its action within one year of the accrual of the claim, we conclude that Polcom's complaint was timely filed — 363 days after AFM denied its insurance claim on November 5, 2019.

## II. Breach of Implied Covenant of Good Faith and Fair Dealing

AFM moves to dismiss Polcom's claim for breach of the implied covenant of good faith and fair dealing, arguing that it duplicates Polcom's breach of contract claim. Polcom disputes this, arguing that its breach of contract claim is premised on AFM's failure to cover damage to the Modules despite its agreement, whereas its breach of implied covenant claim alleges that AFM acted in bad faith and seeks consequential damages.

"Implicit in every contract is a promise of good faith and fair dealing." Skillgames, LLC v. Brody, 1 A.D.3d 247, 252 (2003). "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Fleisher v. Phoenix Life Ins. Co., 858 F. Supp. 2d 290, 298-99 (S.D.N.Y. 2012) (citing Harris v. Provident Life & Accident Ins.

---

on behalf of Polcom. If we adopted Option 2, then we would discourage parties from negotiating and resolving their disputes outside of Court — a position that is not generally favored absent the parties' clear intention. See, e.g., Greenwich Capital Fin. Prod., Inc. v. Negrin, 903 N.Y.S.2d 346, 348 (1st Dep't 2010); see also Newmont Mines Ltd. v. Hanover Ins. Co., 784 F.2d 127, 135 (2d Cir. 1986) ("the meaning of particular language found in insurance policies should be examined in light of the business purposes sought to be achieved by the parties and the plain meaning of the words chosen by them to effect those purposes.") (internal quotation marks and citation omitted).

14

Co., 310 F.3d 73, 80 (2d Cir. 2002)).  In order to avoid redundancy, claims of breach of the implied covenant must be premised on a distinct set of facts from those underlying a claim for breach of contract.  Deutsche Bank Sec., Inc. v. Rhodes, 578 F. Supp. 2d 652, 664 (S.D.N.Y. 2008).  Therefore, a claim for breach of the implied covenant "will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract."  Fleisher, 858 F. Supp. 2d at 299 (citation omitted).

We agree with AFM that the breach of implied covenant claim is duplicative of the breach of contract claim.  Stripped of its conclusory references to good and bad faith conduct, Polcom's breach of implied covenant claim ultimately alleges that AFM failed to cover Polcom's damages, in violation of their agreement.  Further, both the breach of contract claim and the breach of implied covenant claim allege that AFM failed to properly engage in Polcom's claim for coverage.  Compare Compl. ¶ 50 (breach of contract claim) ("Defendant made no attempt to respond to the facts Polcom and AAA raised . . . Defendant's denial of the claim was so lacking in support and redolent of bad faith that no reasonable carrier would . . . be expected to assert it and maintain a no-pay posture") with ¶ 56 (breach of implied covenant claim) ("no reasonable insurer would take the posture that [AFM] has taken here of no negotiation, no engagement, and no willingness to pay

15

any amount . . .").[13]  As the conduct at issue here is the predicate for the breach of contract claim, the breach of implied covenant claim must be dismissed.  Fleisher, 858 F. Supp. 2d at 299 (citation omitted).[14]

## Conclusion

For the foregoing reasons, the Court grants in part and denies in part AFM's motion to dismiss.  The Court concludes that this suit is not time-barred, however dismisses plaintiff's breach of

---

[13] Polcom also suggests that the two claims are distinct because Polcom seeks consequential damages in its breach of the implied covenant claim. However, this is belied by the complaint itself, where Polcom only seeks consequential damages in connection with the breach of contract claim.  In its breach of contract claim, Polcom seeks "actual damages, consequential damages, attorneys' fees, and prejudgment interest," Compl. ¶ 52, and in its breach of implied covenant claim, Polcom seeks "attorneys' fees and other litigation expenses and costs . . . and prejudgment interest," Compl. ¶ 58.  In any event, Polcom makes no effort to specify the basis for a claim of consequential damages.

[14] Polcom relies on H&H Envtl. Sys. v. Evanston Ins. Co., 2019 U.S. Dist. LEXIS 39700, *20-21 (W.D.N.Y. Mar. 12, 2019), in support of its argument that breach of contract and breach of implied covenant claims can exist simultaneously.  There, however, the Court explained that there were "sufficient distinct allegations" to allow the breach of implied covenant claim to proceed. Id.  And even there, the Court was dubious, explaining, "Plaintiff also includes similar allegations in its claim for breach of the covenant of good faith and fair dealing . . . and to the extent those allegations are duplicative of the breach of contract claim, they cannot be pursued as a separate cause of action." Id.  Here, by contrast, we do not view the allegations as distinct.  In other cases relied upon by the court in H&H, the two claims were based on different facts.  See, e.g., Friedman v. Maspeth Fed. Loan and Sav. Ass'n, 30 F. Supp. 3d 183, 195 (E.D.N.Y. July 14, 2014) (concluding that the facts supporting the claims were not the same, as the contract claim was "based on defendant's improper assessment of late fees" whereas the breach of the implied covenant claim was based on "the allegation that [the defendant] misrepresented its records and policy"); Tiffany Tower Condo., LLC v. Ins. Co. of Greater N.Y., 84 N.Y.S.3d 167 (2d Dep't 2018) (holding that the plaintiffs stated a viable breach of implied covenant claim as well as a breach of contract claim, as the plaintiffs "specifically identified the consequential damages allegedly suffered" in connection with the breach of the implied covenant claim, which included additional water damage that arose from a delay in payment of the claim).

implied covenant of good faith and fair dealing claim.  The Clerk of Court is respectfully directed to terminate docket entry 21.[15]

**SO ORDERED.**

DATED:   New York, New York
         July 22, 2021

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[15] The Court acknowledges that plaintiff requested oral argument.  However, given our holding and that our decision is based on clear legal doctrine, the Court determined that oral argument would not be productive.